1
2
3
4
5
6
7
8
9
10
11
12
13
14                    **UNITED STATES DISTRICT COURT**

15                       **DISTRICT OF NEVADA**

16

17  HAROLD CARBAUGH,              )        3:05-cv-00418-HDM-RAM
                                  )
18            Petitioner,         )
                                  )
19  vs.                           )        ORDER
                                  )
20  LENARD VARE, et al.,          )
                                  )
21            Respondents.        )
    _____)
22

23  I.   <u>Introduction</u>

24       This action is a petition for a writ of habeas corpus pursuant

25  to 28 U.S.C. § 2254, by Harold Carbaugh, a prisoner at Lovelock

26  Correctional Center, in Lovelock, Nevada.  Petitioner is serving

27  prison terms upon convictions of sexual assault on a child in

28  violation of Nev. Rev. Stat. § 200.366 and lewdness with a child

                                     1

1  under the age of 14 in violation of Nev. Rev. Stat. § 201.230.

2  II.   Factual and Procedural Background

3      On February 12, 2003, following a jury trial in the state
4  court, the petitioner was convicted of one count of sexual assault
5  with a minor under the age of fourteen and six counts of lewdness
6  with a child under the age of fourteen.  (Def. Exs. E & I).[1]
7  Petitioner was sentenced to life sentences on all counts.[2]  The
8  convictions resulted from sexual acts performed by the petitioner
9  on his great-grandniece ("the victim") on or between January 2000
10 and September 2001.  (*Id.* Ex. B).

11     The relevant facts adduced at trial include the following.
12 Petitioner resided with the victim, her mother, and her
13 grandmother, among others, for several months between February 2000
14 and July 2000.  (*Id.* Ex. 6 (Trial Tr. vol. 1, 128, 133-34, Aug. 6,
15 2002)).  During that time, petitioner would take the victim to
16 school, pick her up, and help her with her homework.  (*Id.* at 36-
17 37).  In July 2000, petitioner moved out after severely hurting a
18 kitten belonging to the victim's mother.  (*Id.* at 37-38, 133-34).

19     On September 18, 2001, the petitioner visited the victim's
20 residence.  (*Id.* at 39, 134-35).  He brought with him a laser light
21 toy for the victim's mother, who let the victim play with the toy.
22 (*Id.* at 40, 90).  The victim took the laser toy into one of the

23

24     [1] Respondents' exhibits were included in their motion to dismiss,
25 labeled A-T, and their answer to the petition, labeled 1-13.

26     [2] Petitioner was sentenced to life sentences with the possibility
   of parole after 10 years for each of the six lewdness counts, the
27 sentences running concurrently.  He was sentenced to a life sentence
   with the possibility of parole after 20 years on the sexual assault
28 count, the sentence to run consecutively to the sentences on the
   lewdness counts.  (Def. Ex. A 10).

bedrooms; petitioner joined her.  (*Id.* at 40, 90).  While they were in the bedroom, the victim testified, petitioner felt the victim's "private parts."  (*Id.* at 92-94).  At one point, the victim's mother opened the door; inside she saw the petitioner lying on the bed facing the victim and the victim quickly covering herself with the sheets.  (*Id.* at 43-44).  Sometime later, the victim came out of the bedroom.  (*Id.* at 45).  The petitioner followed about five minutes later, tucking his shirt into his pants as he did.  (*Id.* at 45, 152, 154).  As the victim was going to bed that night, her mother asked what she and petitioner were doing in the bedroom. (*Id.* at 47).  The victim said that petitioner had been kissing her on the face and touching her private parts.  (*Id.* at 47).  She demonstrated on a stuffed monkey where the petitioner had touched her.  (*Id.* at 138-39).  The next day, the victim's mother and grandmother took her to the hospital, where Dr. Theresa Vergara examined her and found "definite evidence of sexual abuse."  (*Id.* Ex. 7 (Trial Tr. vol. 2, 22, Aug. 7, 2002)).  Petitioner did not testify, and his counsel rested without putting on any witnesses. (*Id.* at 69).

On August 8, 2002, the jury returned verdicts, finding petitioner guilty on all counts as charged.  (*Id.* Ex. A, p. 7).  On September 4, 2002, petitioner filed a motion for new counsel.  (*Id.* Ex. 10).  The court denied the motion, informing petitioner that ineffective assistance of counsel was an issue for post-conviction relief.  (*Id.* Ex. A 8-9).  On October 17, 2002, the petitioner was sentenced.  (*Id.* Ex. A 10).  During the sentencing hearing, petitioner raised a number of concerns about his attorney. (*Id.* Ex. C 7-8).

1    Petitioner filed a direct appeal on November 8, 2002.  (*Id.*

2    Ex. F).  The appeal asserted that the district court erred first in

3    denying defendant's motion in limine to exclude evidence of prior

4    bad acts, and second in denying the defendant an opportunity to

5    cross-examine the victim's grandmother about a prior false

6    accusation of sexual misconduct committed against the victim.  (*Id.*

7    Ex. J).  The Nevada Supreme Court affirmed the judgment of

8    conviction on January 5, 2004.  (*Id.* Ex. L).

9    Petitioner filed a state petition for habeas corpus relief

10   (post-conviction) on January 21, 2005, alleging that his counsel

11   was ineffective in a number of ways.  (*Id.* Ex. N).  The district

12   court found that the defendant failed to show the performance of

13   his counsel was deficient or that it prejudiced his defense and

14   accordingly denied defendant's petition.  (*Id.* Ex. Q).  Petitioner

15   appealed.  (*Id.* Ex. R).  The Nevada Supreme Court affirmed on July

16   6, 2005.  (*Id.* Ex. S).

17   Petitioner then submitted a *pro se* petition for a writ of

18   habeas corpus to this court, initiating this action.  The petition

19   contained 12 grounds for relief.

20   Respondents filed a motion to dismiss, arguing that a number

21   of petitioner's claims were either unexhausted or procedurally

22   barred.  Specifically, respondents argued that Ground 12 of the

23   petition was unexhausted and that to the extent petitioner alleged

24   any claims beyond ineffective assistance of counsel within the

25   other 11 grounds those claims were procedurally barred.  The Court

26   granted the motion and gave the petitioner a choice between

27   abandoning his unexhausted claim or dismissing the petition in its

28   entirety to exhaust the unexhausted claim.  Petitioner elected to

4

abandon his unexhausted claim and proceed on his exhausted claims. Respondents filed an answer to the remaining claims.  Petitioner has filed his reply and the matter stands submitted.

III.   <u>Federal Habeas Corpus Standards</u>

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of

5

clearly established Supreme Court precedent, within the meaning of
28 U.S.C. § 2254(d), "if the state court identifies the correct
governing legal principle from [the Supreme Court's] decisions but
unreasonably applies that principle to the facts of the prisoner's
case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at
413).  The "unreasonable application" clause requires the state
court decision to be more than incorrect or erroneous; the state
court's application of clearly established law must be objectively
unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to,
or an unreasonable application of, federal law, this Court looks to
the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*,
501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072,
1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).
Moreover, "a determination of a factual issue made by a State court
shall be presumed to be correct," and the petitioner "shall have
the burden of rebutting the presumption of correctness by clear and
convincing evidence."  28 U.S.C. § 2254(e)(1).

IV.  <u>Ineffective Assistance of Counsel Standards</u>

"[T]he right to counsel is the right to the effective
assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771
n.14 (1970).  To prevail on an ineffective assistance of counsel
claim, the defendant must meet a two-prong test. *Strickland v.
Washington*, 466 U.S. 668, 687 (1984).  First, the defendant must
show that his counsel's performance fell below an objective
standard of reasonableness. *Id.* at 687-88.  "Review of counsel's
performance is highly deferential and there is a strong presumption
that counsel's conduct fell within the wide range of reasonable

representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253(9th Cir. 1986); *see also Richter v. Hickman*, 2008 WL 943584, at *3 (9th Cir. Apr. 9, 2008).  "A decision not to investigate must be assessed for reasonableness, applying a heavy measure of deference to counsel's judgments." *Richter*, 2008 WL 943584 at *3. Second, the defendant must show that the deficient performance prejudiced his defense.  *Strickland*, 466 U.S. at 687.  This requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

A habeas corpus petitioner's disagreement with his counsel's tactical decisions does not indicate ineffective assistance of counsel.  *Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).  Further, "[f]ailure to raise a meritless argument does not constitute ineffective assistance." *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985), *cert. denied*, 474 U.S. 1085 (1986) (citing *Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977)). Finally, conclusory assertions not supported by a statement of specific facts "do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

V.   <u>Analysis</u>

Petitioner's petition for habeas corpus relief asserts numerous claims for ineffective assistance of counsel, all of which the Nevada Supreme Court, employing the *Strickland* standard, found to be without merit.

First, petitioner alleges that his attorney was ineffective

7

because he failed to conduct any pretrial investigations even
though an investigator had been appointed to his case.  The Nevada
Supreme Court held petitioner failed to show how any of the issues
counsel allegedly should have investigated would have assisted
petitioner's case or changed the outcome of the proceedings.  The
court's decision was not contrary to or an unreasonable application
of *Strickland*.  Most of the petitioner's allegations are vague and
conclusory and do not provide any specifics as to what evidence
counsel should have acquired through investigations.  But even if
the court were to determine that counsel's performance was
deficient for failing to investigate, *see Reynoso v. Giurbino*, 462
F.3d 1099, 1112-13 (9th Cir. 2006), the evidence is insufficient to
persuade the court that the result would have been any different
had those issues been investigated and presented at trial.
Accordingly, petitioner's claim for relief on this count is denied.

Second, petitioner alleges that his attorney was ineffective
because he failed to file any pretrial motions other than a single
motion in limine.  The Nevada Supreme Court held that petitioner
failed to show what motions should have been filed and how they
would have assisted in the trial proceedings.  Having independently
reviewed the record, this court does not find that any other
pretrial motions would have been helpful to petitioner's case, and
his counsel's failure to file any was not deficient.  Accordingly,
the Nevada Supreme Court's decision was not an unreasonable
application of *Strickland*, and petitioner's claim for relief on
this count is denied.

Third, petitioner argues that his counsel attempted to coerce
and induce him into pleading guilty.  The Nevada Supreme Court held

8

that defense counsel gave the petitioner candid advice about the risks of proceeding to trial, and more importantly that petitioner did not plead guilty.  The court's decision was not an unreasonable application of *Strickland* because petitioner cannot show any prejudice as he did not plead guilty.  His claim for relief on this count is denied.

Fourth, petitioner alleges that his attorney was ineffective because he failed to interview the witnesses against him to determine the factual basis for their claims or to discover any impeachment information.  The Nevada Supreme Court held that petitioner failed to show how any of issues he thought counsel should have investigated would have helped him in his case or changed the outcome of the proceedings.  It further held that the impeachment information petitioner sought to have presented would not have been admissible.  The court's decision was not an unreasonable application of *Strickland* because even if his attorney had been permitted to interview the adverse witnesses, the petitioner has failed to articulate what specific factual or impeachment information would have been gleaned through witness interviews.  Petitioner's claim for relief on this count is denied.

Fifth, petitioner alleges that his attorney was ineffective because he did not review the victim's medical reports.  The Nevada Supreme Court held this claim was not supported by the record because counsel told the district court during trial that he was familiar with the medical records.  The court's decision was not an unreasonable application of *Strickland* because petitioner has provided no evidence to rebut his attorney's statement in court that he had reviewed the medical records.  Further, it is clear

from the trial transcript and counsel's questions of Dr. Vergara
that counsel did review the victim's medical records sufficiently
to cross-examine the medical expert.  (Def. Ex. 7 (Trial Tr. vol.
2, 30-32, Aug. 7, 2002)).  Therefore, petitioner cannot show that
his counsel's performance was objectively unreasonable, and his
claim for relief on this count is denied.

Sixth, petitioner alleges that his attorney was ineffective
because he did not consult with and obtain the testimony of a
medical expert to refute Dr. Vergara's findings.  The Nevada
Supreme Court held that petitioner did not show what a different
medical expert would have testified to, or that it would have
changed the outcome of the trial.  The court's decision was not an
unreasonable application of *Strickland.*  "A petitioner may not
simply speculate about how an unretained expert witness would
testify, but must adduce evidence to show what the testimony would
have been."  *Smith v. Schriro*, 2007 WL 779695, at *46 (D. Ariz.
Mar. 13, 2007) (slip copy) (citing *Grisby v. Blodgett*, 130 F.3d
365, 373 (9th Cir. 1997)).  Here, petitioner has not shown that
another medical expert would have determined or testified that the
victim's injuries resulted from something other than sexual abuse
and only speculates that the result might have been different.
Further, petitioner's counsel was not appointed until April 3,
2002, several months after the victim was examined by Dr. Vergara.
Accordingly, petitioner has not shown how the outcome of the
proceedings would have been different, and his claim for relief on
this count is denied.

Seventh, petitioner alleges that his attorney was ineffective
because he did not interview or present favorable witnesses who

would support the petitioner's version of the facts and would
impeach the accusing witnesses.  According to the petitioner, a
number of the witnesses he lists would have testified that the
victim's grandmother had previously made false accusations
regarding sexual abuse on the victim in the past, others would have
contradicted the testimony of the accusing witnesses on a number of
collateral issues, and still others may have had "relevant or
exculpatory information."  The Nevada Supreme Court held that
petitioner failed to show how any of the collateral issues he
thought counsel should have investigated would have helped him in
his case or changed the outcome of the proceedings.  It further
pointed out that evidence of a witness' reputation for truthfulness
is not admissible and that specific instances of conduct may not be
proven by extrinsic evidence.  The court's decision was not an
unreasonable application of *Strickland.*  "[E]vidence about the
testimony of a putative witness must generally be presented in the
form of actual testimony by the witness or on affidavit.  A
defendant cannot simply state that the testimony would have been
favorable; self-serving speculation will not sustain an ineffective
assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (7th
Cir. 1991).  Petitioner provides only vague and conclusory
assertions about what most of the listed witnesses would testify
to, and as to the others he does not provide any affidavits or
other evidence showing what their testimony would have been.
Accordingly, petitioner cannot show any prejudice to his defense
and his claim for relief on this count is denied.

Eighth, petitioner alleges that his attorney was ineffective
because he did not obtain or present any documents supporting his

defense.  Petitioner has not shown that any of the documents he
identifies existed and has not explained how they would have helped
his case or been relevant to the issues at trial.  Therefore, the
Nevada Supreme Court's denial of his ineffective assistance of
counsel claim on this issue was not an unreasonable application of
*Strickland*, and petitioner's claim for relief on this count is
denied.

Ninth, petitioner alleges that his attorney was ineffective
because he failed to object to biased and potentially prejudicial
comments made by prospective jurors regarding their past
experiences with sexual misconduct.  The Nevada Supreme Court held
that petitioner's claim was not supported by the record because
"[a]ll potential jurors who had expressed prejudice due to prior
experiences with sexual molestation were excused" and all remaining
jury members said they could be fair and impartial.  The court's
decision was not an unreasonable application of *Strickland* because
petitioner has failed to show that any bias infected the jury or
that the outcome of the proceedings would have been different if
counsel had objected to the statements.  Therefore, petitioner's
claim for relief on this count is denied.

Tenth, petitioner alleges that his attorney failed to move to
dismiss the sexual assault charge based on insufficient evidence.
The Nevada Supreme Court held that not only did the victim testify
that she had never injured herself, but Dr. Vergara also testified
she found definite evidence of abuse and that urine tests were
negative for infection.  The court's decision was not an
unreasonable application of *Strickland*.  The victim testified that
the petitioner had touched her, the victim's mother and grandmother

testified that the victim reported the touching to them that same night, and Dr. Vergara testified that she found definite signs of sexual abuse occurring within 24-48 hours of the examination.  In light of this, it is unlikely a motion to dismiss based on insufficient evidence would have been granted.  As petitioner has not shown prejudice to his defense, his claim for relief on this count is denied.

Eleventh, petitioner alleges that his attorney failed to adequately confront and cross-examine the victim and the medical expert regarding alternative ways the victim could have injured herself other than from molestation.  He also alleges his attorney failed to impeach the testimony of the victim's mother and grandmother on various issues.  The Nevada Supreme Court held the victim testified she'd never hurt herself where petitioner had touched her, and the medical expert stated that there was "definite evidence of sexual abuse" and that urine tests were negative for infection.  The court's decision was not an unreasonable application of *Strickland* because petitioner's counsel's behavior did not fall outside the wide range of reasonable representation. The victim was asked by the prosecutor whether she had done anything to hurt herself and she answered "no."  (Def. Ex. 6 (Trial Tr. vol. 1, 107, Aug. 6, 2002)).  Defense counsel did not have to ask the question again.  Further, counsel asked the medical expert whether the victim's injury could have been caused by something else, including poor hygiene; the expert granted it was possible (although very unlikely).  (*Id.* Ex. 7 (Trial Tr. vol. 2, 30, Aug. 7, 2002)).  Counsel's tactical decisions, such as not asking a particular line of questions on cross-examination, are given great

deference and must only be objectively reasonable. *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000). Counsel's method of cross-examination was objectively reasonable, and therefore petitioner's claim for relief on this count is denied.

Twelfth, petitioner alleges that his attorney was ineffective because he told the petitioner he was not allowed to testify at trial and barred him from doing so. The Nevada Supreme Court held the petitioner was canvassed on his right to testify and to not testify, and that a cautionary instruction was given to the jury. The court's decision was not an unreasonable application of *Strickland* because the court asked petitioner whether he had discussed his right to testify with his attorney and petitioner responded "yes." (Def. Ex. 7 (Trial Tr. vol. 2, 54, Aug. 7, 2002)). Therefore, petitioner can show neither prejudice nor that his counsel's conduct fell outside the wide range of reasonable representation. Petitioner's claim for relief on this count is denied.

Thirteenth, petitioner alleges that his attorney was ineffective by failing to object to the criminal information because it gave insufficient notice of the charges against him. Specifically, petitioner claimed the criminal information did not provide specific dates of the alleged crimes, stating only that they were committed by the petitioner on or between January 2000 and September 2001. The Nevada Supreme Court held that specific dates do not have to be charged unless time is an element of the crime, time is not an element of the crimes of lewdness with a minor and sexual assault, and "the State could not be expected to provide anything other than approximate dates" where, as here, the

14

victim was five or six years old at the time of the crimes.  (Def.
Ex. S 3-4).  The court's decision was not an unreasonable
application of *Strickland* because the information sufficiently
alleged the charges against the petitioner and thus his counsel's
failure to object did not fall outside the wide range of reasonable
representation and did not prejudice his defense.  Petitioner's
claim for relief on this count is denied.

Fourteenth, petitioner alleges that his attorney was
ineffective because he failed to object to the jury instructions,
which also omitted the specific dates of the crimes at issue.  The
Nevada Supreme Court held the parties stipulated in open court that
the instructions had been settled, and that the state was not
required to prove each instance of abuse because of the victim's
young age.  Further, the court noted that separate acts of sexual
abuse committed as part of a single criminal encounter may be
charged separately, and that the jury found reliable indicia that
the acts had occurred.  The court's decision was not an
unreasonable application of *Strickland* because petitioner has
failed to show the instructions were improper and thus has failed
to show that an objection would have changed the outcome of the
proceedings.  Accordingly, petitioner's claim for relief on this
count is denied.

Fifteenth, petitioner alleges that his attorney was
ineffective because he failed to object to the government's
inappropriate and prejudicial statements made in its opening and
closing arguments.  The only specific statements petitioner points
out are the prosecutor's insinuations that the petitioner might
have been masturbating while he was in the bedroom with the victim

because when he exited the room he was tucking his shirt in.  The
Nevada Supreme Court held the statements were based on evidence
presented at trial.  The court's decision was not an unreasonable
application of *Strickland* because the prosecutor's statements were
speculation based on the evidence presented at trial and petitioner
has not shown that they "so infect[ed] the trial with unfairness as
to make the resulting conviction a denial of due process."  *See*
*Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation
marks and citation omitted).  Accordingly, the petitioner's claim
for relief on this count is denied.

Sixteenth, petitioner alleges that his attorney was
ineffective because he made inappropriate admissions of guilt
during closing arguments.  Petitioner claims his attorney stated
that petitioner was guilty of the charges in 2001, but not those in
2000.  The Nevada Supreme Court held that in fact petitioner's
attorney was addressing a statement by the victim that the
petitioner had not touched her before September 18, 2001.  The
court's decision was not an unreasonable application of *Strickland*.
The record reveals that petitioner's counsel did not make any
admissions of guilt, but rather was discussing the impossibility of
guilt for one of the time frames involved.  This was effective
advocacy, and necessarily had to be addressed given the evidence
presented at trial.  Petitioner has not shown that his counsel's
performance fell outside the wide range of reasonable
representation, and therefore his claim for relief on this count is
denied.

Seventeenth, petitioner alleges that the district court erred
in refusing to grant his presentence motion for a new attorney, and

16

that his counsel was ineffective for failing to move to withdraw once it was clear there was an irreconcilable conflict.  The Nevada Supreme Court held petitioner failed to show "there was an actual conflict or that his counsel's performance was ineffective."  Further, the court held, "a criminal defendant is not entitled to reject court appointed counsel and obtain substitution of counsel at public expense absent a showing of good cause."  The court's finding was not an unreasonable application of *Strickland*.  While there is no right to a "meaningful attorney-client relationship," *Morris v. Slappy*, 461 U.S. 1, 13-14 & n.6 (1983), a defendant is entitled to a substitution of counsel if, after a hearing, "it is demonstrated that there is a breakdown in the attorney-client relationship or that 'an actual conflict of interest existed,'" *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990).  A defendant is not, however, entitled to automatic substitution of counsel merely because he is dissatisfied with his attorney's performance.  *Id.* Petitioner's complaints about his relationship with his attorney reflect only a dissatisfaction with his counsel's performance and trial strategy, not an actual conflict of interest or complete breakdown in the relationship.  Accordingly, petitioner's claim for relief on this count is denied.

Eighteenth, petitioner alleges that his attorney was ineffective because he failed to object to the special sentence of lifetime supervision.  Specifically, he claims the sentence was improperly imposed because it was not alleged in the criminal information and was not based on facts found by the jury.  The Nevada Supreme Court held that imposition of the lifetime supervision was mandatory under Nevada law.  The court's decision

17

1  was not an unreasonable application of *Strickland* because
2  petitioner cannot show prejudice.  Imposition of the sentence was
3  mandatory under state law, *see* Nev. Rev. Stat. § 176.0931(1), and
4  any objection to it would have been unfounded.  Moreover,
5  petitioner's constitutional claims on this ground are without
6  merit.  The special sentence of lifetime supervision was based on
7  the same facts as petitioner's conviction – facts that were found
8  by the jury.  Accordingly, the petitioner's claim for relief on
9  this count is denied.

10       Finally, petitioner alleges that his attorney was ineffective
11 because he failed to give petitioner all documents relating to his
12 case so that he could prepare his habeas petition.  The Nevada
13 Supreme Court held that petitioner failed to show what documents
14 petitioner requested that he did not obtain from counsel and how
15 they would have been helpful to his petition.  The court's decision
16 was not an unreasonable application of *Strickland*.  Other than the
17 trial transcripts, petitioner has not identified any documents he
18 requested from counsel that he did not receive.  Because petitioner
19 was present during trial, he has firsthand knowledge of the
20 proceedings and therefore did not need the transcripts to file his
21 habeas petition.  *See, e.g.*, *Jihad v. Hvass*, 267 F.3d 803, 806 (8th
22 Cir. 2001).  Petitioner's claim for relief on this count is denied.

23       The petitioner has failed to show that any part of the Nevada
24 Supreme Court's decision on his habeas corpus petition was contrary
25 to or an unreasonable application of Supreme Court precedent, or an
26 unreasonable determination of the facts.  Accordingly, his petition
27 for a writ of habeas corpus is denied.

28       **IT IS THEREFORE ORDERED** that the petition for writ of habeas

corpus in this action (#7) is **DENIED**.

     **IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT ACCORDINGLY**.

     DATED: This 4th day of June, 2008.

                         _Howard D McKibben_
                         UNITED STATES DISTRICT JUDGE